IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Rodney W., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 20-cv-50255 ) |
| | ) Magistrate Judge Margaret J. Schneider ) |
| Kilolo Kijakazi, Commissioner of Social Security,[1] | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff's motion for summary judgment [19] is granted and the Commissioner's motion for summary judgment [22] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

**BACKGROUND**

A. Procedural History

On December 6, 2017, Plaintiff Rodney W. ("Plaintiff") filed an application for Social Security disability insurance benefits and an application for supplemental security income under Title II of the Social Security Act. R. 15. He alleged a disability beginning on November 1, 2017. *Id.* The Social Security Administration ("Commissioner") denied his applications on March 7, 2018, and upon reconsideration on June 14, 2018. R. 86–91, 93–97. Plaintiff filed a written request for a hearing on July 17, 2018. R. 98–99. On April 16, 2019, a hearing was held by Administrative Law Judge ("ALJ") Susan F. Zapf where Plaintiff appeared and testified. R. 30–58. Plaintiff was represented by counsel. An impartial vocational expert also appeared and testified. *Id.*

On June 17, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income. R. 15–22. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1–8. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before the Court are Plaintiff's motion for summary judgment [19] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [22].

B. Medical Background[2]

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).
[2] The Court summarizes Plaintiff's medical history that is relevant to this appeal. This section does not

According to the medical records provided, Plaintiff has undergone multiple surgical procedures on his lumbar spine to address lower back pain including a spinal fusion procedure in January 2015. R. 458. In November 2016, Plaintiff underwent a surgical procedure to extend the spinal fusion. R. 432–34. After this surgery, Plaintiff's lower back pain persisted. In March 2018, a spinal cord stimulator was implanted in Plaintiff to assist with his pain. R. 458. In addition to his lower back pain, Plaintiff suffers from bilateral shoulder pain and has been diagnosed with tendonitis. R. 432–34.

On September 6, 2018, Plaintiff underwent a multiplanar multisequential MRI of both shoulders. R. 498–99. Edward LaRow, who prepared the MRI reports on September 7, recorded his impressions that the MRI of Plaintiff's right shoulder showed "[t]endinosis and bursal surface fraying of the supraspinatus and infraspinatus tendons"; "partial tears of the supraspinatus tendon"; and "[s]mall amount of overlying fluid [which] could be an associated bursitis." R. 499. LaRow underlined his finding that the tear in the supraspinatus tendon "involves over 50% of tendon thickness." *Id*. Regarding the left shoulder MRI, LaRow recorded his impression that Plaintiff suffered from "[m]ild tendinosis and fraying of the supraspinatus tendon" and that "[t]here may be an associated bursitis." R. 498.

On September 18, 2018, Plaintiff saw specialist Michael J. Gibbons, M.D., to discuss the shoulder MRI results. R. 496. In a record prepared for Plaintiff's referring physician Roger Sloan, M.D., Dr. Gibbons stated that Plaintiff reported that he suffered from "bilateral shoulder pain, right worse than left intermittent for years." *Id*. Dr. Gibbons found that Plaintiff's shoulders and cervical spine had a full range of motion with minimal pain. *Id*. Dr. Gibbons concluded that the MRI results showed "mild subacromial bursitis" and "[m]ild rotator cuff tendonitis" in both shoulders and a "possible small partial tear of the supraspinatus" in the right shoulder. R. 497. Dr. Gibbons concluded that no surgical intervention was needed and recommended physical therapy. *Id.*

On November 11, 2018, Plaintiff saw specialist Robbye O. Bell, M.D., for a follow-up appointment to discuss the successful stimulator implantation. In a report prepared for Dr. Sloan, Dr. Bell stated that Plaintiff continued to receive "good benefit" from the stimulator and rated his current pain "a 2/10." R. 493. Dr. Bell noted that Plaintiff noticed a worsening of pain since discontinuing his use of Gabapentin and ordered a refill of Plaintiff's prescription and a follow-up appointment in four months. R. 493–94.

On April 12, 2019, Plaintiff underwent separate MRIs of his cervical spine and lumbar spine. Adeel Sabir, M.D., prepared reports for each MRI in which he discussed his findings and then recorded his impressions. Dr. Sabir noted that no prior dedicated cervical spine imaging was available for comparison. R. 655. Dr. Sabir recorded the following impressions based on the cervical spine MRI: (1) "[n]onspecific straightening of the lordotic curvature . . . likely to be from spasm or postural changes[;]" (2) "[c]entral and right paracentral disc herniation at C5-C6 deforms the cord but without significant overall canal stenosis[;]" and (3) "no cord edema myelomalacia, or significant foraminal narrowing." R. 656. Regarding the lumbar spine MRI, Dr. Sabir noted that a 2017 lumbar spine MRI, 2016 lumbosacral x-rays, and a 2015 lumbar spine CT scan were each available to him for comparison. R. 657. Dr. Sabir recorded the following impressions based on

---

represent Plaintiff's entire medical history, or the ALJ's complete review.

the lumbar spine MRI: (1) "findings suggestive of chronic inflammation at the post-surgical bed posterior to the spinal canal without associated collection[;]" and (2) "[n]o disc bulge, disc herniation, spinal canal stenosis, or neuroforaminal stenosis." R. 658.

On April 24, 2019, Plaintiff underwent an MRI examination of his thoracic spine. R. 659. Dr. Sabir's MRI report noted that no prior dedicated thoracic spine imaging was available for comparison. *Id*. After summarizing his findings in detail, Dr. Sabir recorded the following impressions: (1) "multilevel disc degeneration resulting in bulges and protrusions as described, resulting in mild mass effect upon the cord at a few levels without significant overall canal stenosis[:]" (2) "no cord edema or myelomalacia [but noting] that the cord is not well-visualized from T9 to the level of the conus due to artifact from spinal leads[;]" and (3) "[m]inimal anterior wedging of T7, T8, and T9 vertebral bodies . . . likely to be spondylotic in origin." R. 660.

### C. The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since November 1, 2017, when Plaintiff alleges her disability arose. R. 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease and tendonitis of the shoulder. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1, specifically referencing Listings 1.02 and 1.04. *Id*.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work subject to only occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; never climbing ropes, ladders, or scaffolds; occasionally reaching overhead bilaterally; and frequently, but not constantly, reaching forward with his right arm and hand. R. 18. At step four, the ALJ found that Plaintiff could not perform any past relevant work. R. 20. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could perform, including nut sorter, stone setter, and ampule sealer. R. 20−21. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from November 1, 2017, to June 17, 2019, the date of the decision. R. 21.

### STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct.

1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). Nor can ALJs "succumb to the temptation to play doctor and make their own independent medical findings," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), or "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted).

## DISCUSSION

Plaintiff provides two arguments for remand. Plaintiff argues that: (1) the ALJ failed to adequately consider whether Plaintiff's condition met Listing 1.04; and (2) the ALJ impermissibly "played doctor" in determining that the medical imaging—including medical resonance imaging ("MRI") —and physical examinations did not demonstrate a more restrictive RFC without properly consulting a medical expert. This second argument challenges the ALJ's conclusion that Plaintiff's "allegations are inconsistent with the evidence" based on her findings that Plaintiff's "physical exams have largely been unremarkable, recent diagnostic imaging was inconsistent with his complaints, and [Plaintiff] reported significant improvement with his symptoms after the implantation of a spinal cord stimulator." R. 20. Plaintiff notes that the ALJ fails to identify the specific medical imaging or physical exams that she found unremarkable or inconsistent. [19, at p. 8]. Plaintiff contends that the ALJ should have provided this evidence for medical expert review and that this medical expert should have appeared and testified at Plaintiff's hearing.

While no medical expert testified at the hearing, a significant portion of the medical record was reviewed by medical experts. In her decision, the ALJ declined to give controlling weight to any medical opinion but found the opinions of the non-examining state agency consultants—Young-Ja Kim, M.D., and Reynaldo Gotanco, M.D.— "persuasive as they are generally consistent with the medical evidence." R. 19. However, while Dr. Kim and Dr. Gotanco in their opinions dated February 22 and June 13, 2018, respectively, found that Plaintiff was capable of light work with certain exertional and postural restrictions, R. 59–68, R. 70–81, the ALJ determined that Plaintiff should be further limited to sedentary work due to her back pain and reported inability to stand for more than 45 minutes. R. 19–20. The Commissioner argues that Dr. Kim's and Dr. Gotanco's opinions, which pre-dated the ALJ's opinion by more than a year, considered Plaintiff's surgeries and subsequent improvement and that the records postdating their opinions only show

that Plaintiff improved with treatment. [22, at p. 6]. While the ALJ benefited from their opinions in her analysis of the records they reviewed, the benefits of their opinions do not simply extend prospectively. See *Kemplen v. Saul*, 844 F. App'x 883 (7th Cir. 2021) (finding that the ALJ erred by not securing a medical opinion to include the 2017 MRI results that post-dated the state medical consultants' opinion).[3]

While generally discretionary "[t]he use of a medical expert can help ALJs resist the temptation to 'play doctor,' a label that usually produces a remand on judicial review, by evaluating medical evidence on his or her own." *Gebauer v. Saul*, 801 F. App'x 404, 408 (7th Cir. 2020). "It is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (finding that the ALJ "overstepped his role" by determining the claimant's degree of foot elevation without seeking an additional medical evaluation) (internal citations omitted). *See Nichole M. S. v. Saul*, No. 19 C 7798, 2021 WL 534670 (N.D. Ill. Feb. 12, 2021) (finding "after dismissing the state agency medical consultants' assessments because they were outdated, and without an opinion from another medical expert, the ALJ erred by relying on her own interpretation of the medical records" as "despite Nichole's attorney stating the record was complete, the ALJ still had a duty to obtain additional evidence if the record was insufficient to make a disability determination.").

No medical expert was consulted to opine on whether the 2019 MRI results were consistent with Plaintiff's alleged symptoms. Nor does the medical record include any treatment records interpreting the 2019 MRI results. In her decision, the ALJ noted that the "[t]hough there are no accompanying treatment records, [Plaintiff] underwent diagnostic imaging of his spine in early 2019." R. 19. She summarized these results as showing that Plaintiff had "disc herniation at C5-6 without stenosis, multilevel disc degeneration of his lumbar spine without stenosis, and inflammation at the post-surgical bed of his lumbar spine." R. 19. The ALJ concluded without further explanation that "recent diagnostic imaging was inconsistent with [Plaintiff's] complaints." R. 20.

The Seventh Circuit has "said repeatedly that an ALJ may not 'play[ ] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The Seventh Circuit has frequently found MRI results to fall within this category. *See McHenry*, 911 F.3d at 871 (finding that the ALJ erred by comparing an MRI report with earlier medical treatment records himself without the assistance of a medical expert); *Goins*, 764 F.3d at 680 (7th Cir. 2014) (finding that the ALJ erred in interpreting a claimant's first MRI in 11 years herself rather than submitting the new MRI for medical expert review). In *Kemplen*, the Seventh Circuit clarified that while new MRI evidence does not always need to be submitted for medical expert review, the ALJ errs by evaluating the significance of the evidence herself when it is "new and potentially decisive." *Kemplen*, 844 F. App'x at 887. In *Donna M. J. v. Comm'r of Soc. Sec.*, No.

---

[3] The Commissioner argues that Plaintiff waived by failing to raise it in his opening brief the argument that the state agency medical consultants' opinions were outdated by the later MRI results. [22, at 7]. Plaintiff did argue in his opening brief that the ALJ "played doctor" in assessing medical imaging results without the benefit of medical expert. [*See* 19]. Given that analyses of these two arguments inherently overlap, the Court considers the "playing doctor" argument in this discussion and therefore need not address the waiver issue.

3:20-CV-00556-MGG, 2022 WL 594144, (N.D. Ind. Feb. 28, 2022), the court interpreted *Kemplen* as requiring that "the ALJ's opinion must demonstrate to a reviewing court that the new evidence is insubstantial when weighed against the evidentiary record." *Donna M. J.*, 2022 WL 594144, at *5–6 (finding that the ALJ failed to "explain why the x-ray and MRI are consistent with the evidentiary record [since] the ALJ did not compare or contrast the x-ray and MRI to prior medical findings [n]or did the ALJ accompany the x- ray and MRI summaries with commentary or context from medical professionals.").

The Commissioner argues that an updated medical opinion is not required to assess new medical imaging if the ALJ's decision remains supported by substantial evidence. [22, at 7]. This argument fails to confront the standard for determining if a decision is supported by substantial evidence. When an ALJ interprets "potentially decisive" medical evidence without the aid of medical experts, her decision is not supported by substantial evidence. *See McHenry*, 911 F.3d at 872. The Commissioner cites the Seventh Circuit's finding in *Karr* that an MRI only available to one medical professional who examined the claimant did "not undermine [its] conclusion that the ALJ reached her decision based on substantial evidence." *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021). This finding in *Karr* was made not in determining whether the ALJ erred in assessing the MRI without medical expert review, but in determining whether statements made in a letter authored by the physician who reviewed the MRI were "extreme." *Id*. Thus in *Karr* unlike in this case, the ALJ had the benefit of reviewing a physician's interpretation of the MRI results.

The 2019 spinal MRI reports were provided after the record was reviewed by medical expert and could have, upon medical expert review, decisively corroborated the extent of the disabling back pain alleged by Plaintiff. Thus, the ALJ erred in assessing this "new and potentially decisive medical evidence" herself without the aid of medical expertise. *See Goins*, 764 F.3d at 677.

Further, not only did the ALJ assess the MRI reports herself without consulting a medical expert, she did so without so any discussion of how she reached her conclusion. The ALJ did not even go so far as to assert that the 2019 MRI reports are consistent with past MRI reports. The Commissioner does make this argument in her brief. She contends that the 2019 MRI reports show no significant changes from the previous MRI reports. [22, at p. 6]. However, the previous reports which the Commissioner cites to for comparison: lumbar spine x-rays and CT scans performed in spring 2017, R. 408–20; a lumbosacral spine x-ray performed on November 20, 2016, R. 430; and a lumbar spine MRI and x-rays performed in November 2017, R. 435–36, were each performed on the lumbar spine within a year of his 2016 surgery while the 2019 MRIs were performed on the lumbar, thoracic, and cervical spines more than a year after the stimulator implantation.

In interpreting the 2019 MRI results herself, the ALJ impermissibly "played doctor . . . "[b]ecause without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with h[er] assessment." *See Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018). *See Dolan v. Colvin*, No. 15 CV 50185, 2016 WL 6442226, at *4 (N.D. Ill. Nov. 1, 2016) (finding that the ALJ impermissibly "play[ed] doctor" when she concluded that a "March 2013 MRI showed no significant changes compared to the April 2010 findings" since no medical expert compared the MRI results and "although this second MRI report refers in places to 'mild' findings, such as 'mild lumbar canal stenosis' and '[m]ild

6

spondylotic changes,' these are medical terms that are not obvious to a layperson, and thus need interpretation by an expert."); *Graf v. Berryhill*, No. 17 CV 50086, 2018 WL 6018604 (N.D. Ill. Nov. 16, 2018) (finding that when the ALJ rejected opinions from treating physicians, gave only some weight to the state-agency doctors' opinions which failed to review later evidence, "[t]he lack of any opinion supporting the ALJ's analyses strongly suggests that the ALJ was playing doctor, especially given the need to sort through a complex medical record addressing numerous and sometimes overlapping conditions"); *Joseph J.L. v. Comm'r of Soc. Sec.*, No. 3:20-CV-621-MAB, 2022 WL 856811, at *9 (S.D. Ill. March 23, 2022) ("there is no medical opinion in the record that sheds light on the significance of the 2017 MRI…[g]iven the unknown but potential significance of the 2017 MRI, the ALJ erred in drawing conclusions from the technical medical evidence without relying on a medical expert").

"There is always a danger when lawyers and judges attempt to interpret medical reports." *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016). *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (finding the ALJ erred in relying on a claimant's "unremarkable" MRI results as evidence discrediting her alleged migraine symptoms, because "[d]octors use MRIs to rule out other possible causes of headache . . . meaning that an unremarkable MRI is completely consistent with a migraine diagnosis"). In *Israel*, the Seventh Circuit found that in affirming the ALJ's determination the district court erred when "without citing any medical opinion" it characterized 2007 and 2010 MRI results as "inconsistent on their face with Israel's claim of disability." *Israel*, 840 F.3d at 439. Recognizing the district court made clear errors in assessing the MRI reports, the Seventh Circuit found that the MRI reports "appear[ed] consistent, at least in part" with the claimant's allegations. *Id.* at 440. The Seventh Circuit ultimately found that as "Israel's treating physician was aware of these results and apparently did not find them inconsistent with Israel's subjective report of disabling pain" the MRI reports "should be reviewed by a physician to determine whether they are in fact consistent with Israel's claim of disability." *Id.* ("Because no physician in the record has opined on whether these results are consistent with Israel's claim of disabling pain, and because the reports are replete with technical language that does not lend itself to summary conclusions, we cannot say whether the results support or undermine Israel's claim."). While here there are no treatment records postdating the MRI results from which to deduce the reactions of Plaintiff's treating physician, as in *Israel*, the ALJ has provided only her own conclusion about the MRI reports' consistency with Plaintiff's allegations without the benefit of any medical expert opinion or even her own reasoning.

The ALJ did have medical expertise to rely upon when determining that Plaintiff's "more recent shoulder pain" was "consistent with diagnostic imaging showing tendinosis but his physical exams did not reveal significantly diminished functioning." R. 20. The 2018 MRI examinations performed on Plaintiff's shoulders are contextualized within the treatment record. Unlike the 2019 MRI results, the ALJ benefitted from a medical interpretation of these MRI results available to her. *See* R. 496. Similarly, the ALJ had the benefit of some medical expertise in determining that the recent physical examinations were unremarkable since she could review the treatment notes of Plaintiff's physicians. However, the last physical examination in the medical record preceded Plaintiff's 2019 MRI examinations by five months and thus does not contain a medical expert interpretation of the MRI results. *See* R. 654.

7

      The Court finds that the ALJ erred in evaluating the 2019 spinal MRI results independently without the benefit of expert medical opinion. While the Court does not presume to know how to interpret the 2019 MRI reports, a medical expert could find them to support Plaintiff's allegations of debilitating back pain – potentially leading to a finding of disability. For these reasons, the Court finds that the ALJ did not support her decision with substantial evidence. Because the Court finds that a remand is necessary, the Court need not consider Plaintiff's other argument for remand.

## CONCLUSION

      For the foregoing reasons, Plaintiff's motion for summary judgment [19] is granted and the Commissioner's memorandum in support of motion for summary judgment [22] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

Date: 12/05/2022                                ENTER:

                                                           *Margaret J. Schneider*
                                                           United States Magistrate Judge